**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dudley Greer, dba Greer Farms,<br><br>   Plaintiff,<br><br>v.<br><br>T.F. Thompson & Sons, Inc., et al.,<br><br>   Defendants.<br>―――――――――――――――――<br>T.F. Thompson & Sons, Inc., et al.,<br><br>   Counter-Plaintiffs,<br><br>v.<br><br>Dudley Greer, dba Greer Farms,<br><br>   Counter-Defendant. | No. CV-10-0799-PHX-SMM<br><br>**ORDER** |

  Before the Court are: (1) Defendant/Counter-Plaintiff Richard Clemenson Sales Co.'s ("Defendant") Motion for Determination for Choice of North Dakota Law ("Motion for Determination") (Doc. 36); (2) Plaintiff/Counter-Defendant Dudley Greer, dba Greer Farms' ("Plaintiff") Cross-Motion Regarding Non-Application of North Dakota Law on Waiver of Warranties ("Cross-Motion") (Doc. 38); and (3) Defendant's Motion for a Rule 56(f) Continuance of the Plaintiff's Cross-Motion for Summary Judgment Regarding Non-Application of North Dakota Law on Waiver of Warranties ("Motion for Rule 56(f) Continuance") (Doc. 39).

Plaintiff has responded (Doc. 37) to Defendant's Motion for Determination (Doc. 36), and Defendant has replied (Doc. 40).  Defendant has responded (Doc. 48) to Plaintiff's Cross-Motion (Doc. 38), and Plaintiff has replied (Doc. 50).  Plaintiff has responded (Doc. 43) to Defendant's Motion for Rule 56(f) Continuance (Doc. 39), and Defendant has replied (Doc. 45).  Therefore, the motions are fully briefed and ready for decision.

## BACKGROUND

Plaintiff is an Arizona farmer who produces red potatoes and other crops. (Doc. 1 ¶ 1.) Defendant is a North Dakota corporation that produces seed potatoes. (Doc. 1 ¶ 3.) In 2008, Plaintiff, who was in Arizona, agreed during a telephone conversation with Defendant's agent, who was in North Dakota, to purchase Defendant's seed potatoes. (Doc. 1 ¶ 7.) Plaintiff paid to ship Defendant's seed potatoes via a third-party from North Dakota to Arizona. (Doc. 36, Exs. B-H.) The seed potatoes arrived between November 2008 and January 2009 (Doc. 36, Exs. B-H), and Plaintiff began planting them on December 11, 2008 in fields located in Waddell, Arizona. (Doc. 37 at 2-3.)

After Plaintiff began receiving shipments of Defendant's potatoes, Defendant sent Plaintiff an invoice dated December 19, 2008 (Doc. 36, Ex. I) and another invoice dated February 5, 2009 (Doc. 36, Ex. J). Printed in red ink on both invoices was language that read: "This contract is made in North Dakota and shall be interpreted, governed and construed according to North Dakota law." (Doc. 36, Exs. I-J.) Under North Dakota Law, licensed "certified seed potato producers[] and wholesale potato dealers . . . make no expressed or implied warranty of any kind as to the quantity or quality of the crop produced from the seed potatoes or through other produce inspected and certified, including merchantability, fitness for a particular purpose, or absence of disease." N.D. Cent. Code § 4-10-12.1.  Further, "[n]either the producer, [or] the seller, . . . make any warranty or representation of any kind, express or implied, as to the quantity or quality of the crop produced from certified seed, including merchantability, fitness for a particular purpose, or absence of disease, or varietal or selection identity.  The only representation is that the seed

- 2 -

potatoes were produced, graded, packed, and inspected under the seed certification rules and regulations of the North Dakota state seed department." N.D. Admin. Code § 74-04-01-03.

Plaintiff alleges that the seed potatoes Defendant sold were diseased, causing Plaintiff damages. (Doc. 1 at 5-8). On April 12, 2010, Plaintiff sued Defendant alleging: (1) Breach of Contract/Express Warranty; (2) Breach of Implied Warranty of Merchantability; (3) Breach of Implied Warranty of Fitness for a Particular Purpose; (4) Breach of Implied Covenant of Good Faith and Fair Dealing; (5) Negligence; and (6) Fraudulent Concealment. (Doc. 1 at 5-8.) Defendant filed a Motion for Determination on August 18, 2010, arguing that North Dakota law applies in this case under a choice-of-law provision that the parties allegedly agreed to and because North Dakota has the most significant relationship to the transaction under the Restatement (Second) on Conflict of Laws. (Doc. 36.) Plaintiff contends that he entered no such choice-of-law agreement with Defendant and that Arizona has the most significant relationship to the transaction. (Doc. 37). Plaintiff also filed a Cross-Motion on September 7, 2010, requesting a determination on whether North Dakota law on waiver of warranties applies and raising the issue of whether such a contract term is unconscionable. (Doc. 38.) Defendant on September 10, 2010 filed a Motion for Rule 56(f) Continuance of Plaintiff's Cross-Motion, alleging that the issues of effectiveness of waivers and unconscionability are fact-intensive and require discovery. (Doc. 39.) After consideration of the issues, the Court finds the following.[1]

**DISCUSSION**

**I.    Arizona's Choice-of-Law Rules**

In diversity cases, district courts in Arizona must look to Arizona's choice-of-law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Arizona courts

---

[1] Defendant requested oral argument in connection with their Motion for Determination. (Doc. 36). The parties have had the opportunity to submit briefing. Accordingly, the Court finds the pending motions suitable for decision without oral argument and Defendant's request is denied. See L.R. Civ. 7.2(f).

- 3 -

apply the Restatement (Second) on Conflict of Laws (the "Restatement") to determine the applicable choice of law in a contract lawsuit. See Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002); Swanson v. Image Bank, Inc., 77 P.3d 439, 441 (Ariz. 2003). If the parties' contract contains a choice-of-law provision, the court must decide whether "that choice is 'valid and effective' . . . under Restatement § 187." Cardon v. Cotton Lane Holdings, Inc., 841 P.2d 198, 203 (Ariz. 1992). If the parties have not made a valid and effective choice of law, "the contractual rights and duties of the parties are determined by the local law of the state having the most significant relationship to the parties and the transaction." Cardon, 841 P.2d at 202 (1992) (citing Restatement (Second) Conflict of Laws § 188).

## II.     Whether the Parties Have Made a Valid and Effective Choice of Law

The Court will first determine whether the parties agreed to resolve any problems arising from their contract under North Dakota law. See Restatement (Second) Conflict of Laws § 188 cmt. a. It is undisputed that choice-of-law issues were not discussed when the parties reached an oral agreement on the seed potato sale. Rather, Defendant claims that Plaintiff consented to the application of North Dakota law by not objecting to a choice-of-law provision included in two invoices that Plaintiff received in December 2008 and February 2009. (Doc. 36 at 2.)

Because the parties did not expressly agree to a choice-of-law provision, the Court must look to the circumstances in which an additional term contained on a written confirmation of an agreement–such as an invoice–functions as an acceptance of that additional term. See Arizona Revised Statutes ("A.R.S.") § 47-2207(B). In pertinent part, A.R.S. § 47-2207 states that:

> A.  A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
> B.  The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>     1. The offer expressly limits the terms of the offer.
>     2. They materially alter it; or

- 4 -

        3. Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

A.R.S. § 47-2207. "An additional term included in a written confirmation is considered to be a material alteration which will not become part of the contract if the term's inclusion will result in surprise or hardship if incorporated without express awareness by the other party." A.R.S. § 47-2207, cmt. 4; see also 67 Am. Jur. 2d Sales § 155 (2010). An example of the type of clause that would typically "materially alter" a contract is "a clause negating such standard warranties as that of merchantability or fitness for a particular purpose in circumstances in which either warranty normally attaches." A.R.S. § 47-2207 cmt. 4. Though there are apparently no controlling cases in the Ninth Circuit, courts "largely have held that a choice-of[-]law clause *is* a material alteration." <u>Trans-Tec Asia v. M/V Harmony container</u>, 435 F. Supp. 2d 1015, 1025 (C.D. Cal. 2005).

        Defendant contends that North Dakota law applies because, under A.R.S. § 47-2207, Plaintiff is a merchant and the choice-of-law provision in the invoice did not materially alter the terms of the parties' earlier agreement. (Doc. 36 at 4-5.) Plaintiff denies that he is a merchant and argues that the choice-of-law provision in the invoice materially altered the contract, making the additional terms proposals rather than part of the existing contract. (Doc. 37 at 6-8.)

        The Court does not decide whether or not Plaintiff is a merchant, but finds that even if Plaintiff is a merchant, the choice-of-law provision in the invoice materially alters the contract. <u>See</u> A.R.S. § 47-2207. The Court finds that the choice-of-law provision in the invoice is a material alteration because differences between North Dakota and Arizona law could result "in surprise or hardship if incorporated without an express awareness by the other party." A.R.S. § 47-2207 cmt. 4; <u>see also</u> 67 Am. Jur. 2d Sales § 155. There is no indication here that Plaintiff manifested an express awareness of the choice-of-law provision that arrived in an invoice after the potatoes arrived in Arizona and were in the process of being planted. And it appears that if North Dakota law applies in this case, the choice-of-law

- 5 -

1 provision would also function as a waiver of warranties, including a waiver of "fitness for
2 a particular purpose." N.D. Cent. Code § 4-10-12.1; N.D. Admin. Code § 74-04-01-03. By
3 contrast, the law in Arizona, which tracks the language of Article 2 of the Uniform
4 Commercial Code, is that warranties of merchantability and fitness for a particular purpose
5 are generally implied in the contracts for the sale of goods. A.R.S. §§ 47-2314-2316. The
6 Court makes no findings as to the existence or non-existence of any warranties or other
7 limitations on liability as they pertain to this case. However, the North Dakota statutes cited
8 above include the type of language that would "normally 'materially alter' the contract."
9 A.R.S. § 47-2207 cmt. 4.   Further, the Court agrees with the District Court in Trans-Tec
10 Asia that a majority of courts have found choice-of-law provisions under a variety of
11 circumstances to be a material alteration. 435 F. Supp. 2d at 1025. Therefore, the Court
12 finds that the choice-of-law provision contained in Defendant's invoice constitutes a material
13 alteration that renders that provision ineffective.

**III. Whether Arizona or North Dakota Has the Most Significant Relationship to the Transaction and Parties**

In determining whether Arizona or North Dakota law applies to the contract between Plaintiff and Defendant, the Court will look to which state "has the most significant relationship to the transaction and the parties under the principles of § 6." Restatement (Second) Conflict of Laws § 188(1); see also Aries v. Palmer Johnson, Inc., 735 P.2d 1373, 1381 (Ariz. Ct. App. 1987). Under Restatement § 6, the Court should consider the following factors when addressing any choice-of-law decision: "(a) the needs of the interstate [] systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." Id. § 6. When applying the principles of § 6 to contracts cases, the Court should consider the following factors:   "(a) the place of

- 6 -

contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." Id. § 188(2). "The contacts are to be evaluated according to their relative importance with respect to the particular issue." Id. § 188(2).

The Court will first look at the factors set forth in Restatement § 188(2). As the parties acknowledge, the (a) place of contracting and (b) place of negotiation are not pertinent factors, as the agreement was reached while Plaintiff was in Arizona, and Defendant and its agent were in North Dakota. (Doc. 36 at 7; Doc. 37 at 15); see also Restatement (Second) Conflict of Laws § 188(a)-(b), cmt. subsec. (2)(e) ("This [place of negotiation] contact is of less importance when there is no one single place of negotiation and agreement, as, for example, when the parties do not meet but rather conduct their negotiations from separate states by mail or telephone.") The (e) domicil, residence, nationality, place of incorporation and place of business of the parties also provides scant guidance, as Plaintiff and his business are based in Arizona and Defendant is based in North Dakota. (Doc. 1 at 1); Restatement (Second) Conflict of Laws § 188(2)(e). Both parties agree that Defendant performed by shipping the potatoes from North Dakota. (Doc. 36 at 7, Doc. 50 at 9.) Though the act of performing payment apparently required Plaintiff and his bank to initiate payment in Arizona so that payment could be received by Defendant and its bank in North Dakota, payment was ultimately made in North Dakota. Restatement (Second) Conflict of Laws § 188(2)(c).

The last Restatement § 188(2) factor that the Court will consider when determining whether Arizona or North Dakota "has the most significant relationship to the transaction and the parties" is "(d) the location of the subject matter of the contract." See Restatement (Second) Conflict of Laws § 188(2)(d). The comment regarding Restatement § 188(2)(d) holds:

- 7 -

> The state where the thing or the risk is located will have a natural interest in transactions affecting it. Also the parties will regard the location of the thing or of the risk as important. Indeed, when the thing or the risk is the principal subject of the contract, it can often be assumed that the parties, to the extent that they thought about the matter at all, would expect that the local law of the state where the thing or risk was located would be applied to determine many of the issues arising under the contract.

See Restatement (Second) Conflict of Laws § 188 cmt. subsec. (2)(e).  Though Plaintiff alleges that the seed potatoes were infected prior to leaving North Dakota (Doc. 1 at 5-8), it was not until they were planted in Arizona that the alleged damages underlying Plaintiff claims occurred (Doc. 1 at 3-8).  Given that the seed potatoes that are the subject of this dispute were planted in Arizona and allegedly caused harm in Arizona, the Court finds that (2)(e) is the most important factor listed in Restatement § 188 under the circumstances of this case, and that it supports the application of Arizona law in the contract dispute between Plaintiff and Defendant.

Further, the application of Arizona law supports the aims stated in Restatement § 6.  By applying Arizona law, which appears to conform more with the widely adopted Article 2 of the Uniform Commercial Code than does North Dakota law in matters of warranties for potatoes, the Court intends to further (a) the interstate system by promoting (d) the protection of justified expectations, (e) the basic policies underlying contract law, (f) the values of certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.  Restatement (Second) Conflict of Laws § 6(2).  Also, applying Arizona law will further the (b) relevant policies of the state of the forum, namely the use of warranties to protect the contractual interests of goods purchasers.  Id.; see also A.R.S. §§ 47-2314-2316.  For the reasons stated above, the Court will apply Arizona law in this case.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Determination for Choice of North Dakota Law (Doc. 36) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Cross-Motion Regarding Non-Application of North Dakota Law on Waiver of Warranties (Doc. 38) is **GRANTED** only to the extent that the Court will apply Arizona law in this case.

**IT IS FURTHER ORDERED** that Defendant's Motion for a Rule 56(f) Continuance of the Plaintiff's Cross-Motion for Summary Judgment Regarding Non-Application of North Dakota Law on Waiver of Warranties (Doc. 39) is **DENIED.**

DATED this 19th day of January, 2011.

　　　　　　　　　　　　　Stephen M. McNamee
　　　　　　　　　　　　　United States District Judge

- 9 -